Case number 18-4234, USA v. Marshyia Ligon. Argument not to exceed 15 minutes per side. Mr. Grostek, you may proceed for the appellant. Good morning, Your Honors. Good morning. Christian Grostek on behalf of Marshyia Ligon. I'd like to reserve three minutes for rebuttal. That's fine. And may it please the Court, this appeal raises two issues. The first is that the government breached the party's plea agreement by arguing for a more severe sentence than what it agreed to. Now, it's black-letter law. A plea agreement is governed by contract principles. And this contract, this plea agreement, the parties agreed to a particular base offense level and agreed that they would both recommend a sentence within the guidelines range determined by that offense level. There's no dispute that the government's arguments violated that provision. Once the district court calculated a higher offense level than what the parties contemplated and the government's counsel rose to make his argument, he argued for a sentence within that higher range and not within the parties' agreed range. That violated that provision of the plea agreement. Well, he also said, I would object to that enhancement. The government's lawyer did say that. The government's lawyer said that a couple times, yes. He said that in a sentencing memo. He said that when the court was discussing the enhancement. And then he said it again after the court had imposed the sentence. But the one time when the government's counsel was given an opportunity to make a recommendation to the court on the actual sentence given, there was only one argument made and it was a sentence within the higher guidelines range. Now, at what point was that? Was that at the point of allocution or was that after the sentencing when this breach occurred? So that was at the allocution, exactly. The way the sentencing proceeding occurred was the district judge walked through the pre-sentence report and addressed, there was really one objection and it was to this four-point enhancement. Resolved that objection, decided to include it, then gave the parties their chance to allocute. First the government's attorney, at which point the government's attorney recommended a sentence within the higher range. Then the defense attorney and then the defendant. And then imposed the sentence and then asked for objections. So once the district court had decided that the enhancement should be applied, is it your view that the government still had an obligation to object and argue for a sentence within this, I forgot, 21 to 27 month? Yes, with one caveat. The government wasn't obligated to make any recommendation at all. Under the plea agreement, what it says is the parties agree on the space offense level and agree that they will not recommend a sentence outside that range. So the government could have stood up and said, we rest on our briefs. But once the government decided to make a recommendation, it was bound to make a recommendation within the 21 to 27 month range. And instead it adopted the 30 to 37 month range and made several arguments to the court suggesting why that range was the appropriate sentence. That violated the terms of the plea agreement. Well, the government says if there in fact was a breach, that the breach was cured, I guess after the sentence was actually announced. The government gave some indication that it didn't want to be inconsistent with terms of the plea agreement. Why isn't that a cure? Two reasons. It was not an unequivocal cure, which the case law requires. And second, it came too late. On the first point, I mean, I look at the Diaz-Gimenez case out of the Seventh Circuit where they said the quote there was, I suppose a larger sentence could be appropriate before the government's attorney made their purported cure. They said that wasn't unequivocal. Starting with, I suppose a larger sentence could be appropriate. Here, what the government's attorney said was, started with when I was arguing for a sentence and a lengthy sentence, which I do believe that this defendant deserves and it's already been imposed by this court. That's at page ID 294. So the first thing the government's attorney said for this purported cure was, I do think that this defendant deserves the sentence this court has already imposed. That's not a cure. That's retracting the cure before you've cured. But also, even if it had been an unequivocal cure, it came after the sentence was imposed. That's too late for it to be meaningful. The court had already imposed its sentence. Now— At that point, the court is asking for procedural objections, right? Exactly. Not substantive objections. That's right. So, I mean, I'm not sure the court can even set aside the valid sentence at that point. I mean, it's already been imposed orally. It's effective when the oral pronouncement is made and it can cure procedural objections to it. I mean, that's what I think the question is all about, to make sure there's no procedural—the substantive considerations. I think you're right. It's too late. And the other thing here is that the cure—the government's sentence ends. I mean, your quote was that I think he deserves the sentence that was imposed of 31 to 37 months. However, I didn't want to—I don't want to be inconsistent. It was the position. I don't know what the rest of the sentence is. I guess you have to read it in that I don't want to be inconsistent with my prior recommendation, but it's not there. It's cut off, right? That's correct. So I don't know how that can be a cure when it's only a half a sentence. I'm obviously not going to dispute that, Your Honor. No, I— And I would add that— I mean, I have trouble—this is questions for the government, but how that's a cure when it's left hanging. That's correct. And I believe the judge followed up directly with that with I'm not sure what you're saying. Yeah, it doesn't matter because I'm going to impose the sentence anyway. Right, right. And I believe—I would turn on that to the remedy. The government says the remedy should be left to the district court to decide. We submit the law as clear, starting with Santabella v. New York, out of the U.S. Supreme Court, which has obviously binding, that says the remedy is either specific performance resentencing before a new judge or withdrawal of the plea. Now, withdrawal of the plea is obviously the more drastic remedy, and we're not asking for that here. This is the kind of breach that can be cured by a resentencing before a new judge. I would also submit that Santabella is almost on all fours. I re-read it again yesterday. In Santabella, there was an agreement that the prosecutor would not make a recommendation. And then at sentencing, the prosecutor recommended the maximum sentence. And the judge even said in that sentencing hearing, well, I'm not influenced by the judge. I think the quote was, I don't care one whit what the prosecutor said. But the Supreme Court nevertheless held, one, that's a breach under standard contract principles, and two, the remedy is resentencing before a new judge. I'm not quite sure. I mean, I know that's exactly what the Supreme Court held, but I'm not sure the rationale of a different judge in that situation. And the Supreme Court doesn't explain it. I mean, do you have any guess why a different judge is necessary when the problem was the prosecutor's problem and not the judge's? Right. I think that's a good question. And the one thing I glean out of the Supreme Court's decision there is they say we mean no criticism of the judge. Yeah. So why do you take the case from them? Right, right. I don't understand it. Well, so we're not looking at things like reassignment, right? Is there a reason to question the judge? No, we're looking at what's a meaningful remedy for this breach. And I think this is valid, which is if we stand back and look at what is the appearance of this, having all of us go back and see. Appearance, okay. Right. Having us all go. That's the answer. I think that's right. Maybe not any actual prejudice, but we're going to eliminate the appearance of prejudice. I think that's right, which is anyone looking from the outside saying, wait, you're going to go back and now go through the motions of a reason? Here it's more prejudicial because the judge says I'm going to pose a sentence no matter what the recommendation is. Right, right. So, I mean, your argument of a different judge here factually is much stronger than Santabello, I think. Well, I think it's actually the same as Santabello because the judge there said, I'm not going to listen to the prosecutor. I don't care one whit what the prosecutor says. That was the same here. Here, yeah, okay, here it's very clear that, I mean, if we went back and the prosecutor said, yes, I'm going to recommend the original guidelines of 21 to 27, the judge has already made it clear that he's going to pose the sentence again, so it's a futile exercise. I think that's correct, right. And this court, I mean, the Supreme Court and then this court in Fitch and Barnes have held that we don't look to harmless error. We don't look to see whether the judge would have done the same thing. And so no matter what the judge said, the remedy is resentencing before a new judge. We did raise a second issue. Rather than dig into it, I'm happy to answer any questions on that, but my time is starting to draw. What was the second issue? The second issue is the substantive enhancement itself. We believe the district court erred by adding that. Well, here, if we have a resentencing before the judge, I mean, would it be more prudent to let him rule on that in the first instance? I believe that's correct. Because we're vacating the sentence in its entirety and we start over again, right? That's correct. And all the case law, again, Sandobello, Fitch, and Barnes all say, yes, it's just a resentencing. We do believe the district court erred specifically by incorporating what all the parties agree was just an inaccurate statement by the FBI agent and using that as a basis to enhance the sentence. I believe that that's fully brief, though, so unless the court has questions about that, we would simply ask to vacate the sentence and remand for resentencing before a new judge. Thank you. Okay. Thank you, Counsel. Good morning. Good morning. May it please the Court, James Ewing for the United States. The government did not breach the plea agreement in this case, and the district court's factual findings were sound. The government told the district court five separate times that it did not believe that the 2K2.1 enhancement applied. I'm looking at page ID 55, 89, 160, 161, 259 to 260, and 294 to 295 with Judge Griffith. The last one was the one that you were discussing that came after the pronouncement of sentence. The reason I bring that up, the five separate times, is that that was the pivotal question in this appeal, or excuse me, in this sentencing, was whether the 2K2.1 enhancement applied. And so the AUSA told the district court judge, we don't think it did. And so the district court judge ended up disagreeing with that, but that was the benefit. Didn't the government also agree to recommend a sentence without the enhancement, which was the 21 to 27 months? We did, and I agree with my. So that was part of their contract, their promise. And why wasn't that breached when the government says that I think the appropriate sentence is 31 to 37 months? And I agree with my colleague's kind of recitation of what we signed up for. I think we signed up for both. We signed up for. And so that was a moment. You didn't breach the lack of the enhancement, but you did breach the months of the sentence, though. I agree, Your Honor, that that statement was not in line with the plea agreement. However, that's the part that the AUSA cured afterwards. How do you cure it? I mean, first of all, it's too late. The sentence has been imposed at the time the statement is made. And secondly, the government's sentence here is, I mean, to me it's incomplete. It says we don't want to be inconsistent, but then the government's attorney is cut off, and I don't know, it's not in the record exactly what he was going to say. I would point, Your Honor, to further up on the same page, page ID 294, where the AUSA says I would just reiterate that what I put in my sentencing memorandum, that was still the government's position. So in the sentencing memorandum, the AUSA said we don't think the 2K2.1 enhancement applied, and we agree to argue for within guideline range of 21 to 27 months. Along in the next page, page ID 295, the AUSA formally objects to the application of the enhancement. So that is the cure, Your Honor. And we know from cases like Puckett in the Supreme Court, and that's a Penn site page 140, says that some breaches can be cured. And I would submit that this is the whole purpose of the Bostick question, at the end of a sentencing proceeding, is that if there are any issues or concerns that can be cured right there on the spot without going through the process of an appeal, then let's do it there. Well, procedural concerns and not substantive concerns is Bostick. And the length of the sentence, I think, is substantive. As opposed to you fail to consider this factor and you fail to consider this or that, the judge, I doubt, has the authority or the total discretion just to change his mind at that point because the sentence has been imposed and he can't simply change his mind. He can clear up procedural irregularities at that point, but the sentence is the sentence at that point, I think. Your Honor, with respect, that's not my understanding of Bostick and its progeny, and I admit I don't have a case to cite directly to you, but my understanding was if one of the parties drew to the attention of the district court judge, hey, you made an error, for example, on the criminal history, and the district court judge says, you know what, you're right. I think the district court judge does have the authority to revisit the sentence. While they're still there on the record, they haven't, for example, closed the court. It's still in the same kind of sentencing proceeding. The sentencing proceeding is not over. I think that's the whole point of the Bostick question is allowing that district court judge, who's best postured to fix stuff like this, to do it. And so that was the response. I think the important aspect, though, that I'm trying to relay is that the cat was kind of out of the bag by the time that the AUSA made the misstatement, in the sense of the AUSA is arguing three times on the record and twice in written form that the 2K2.1 enhancement didn't apply. The district court judge disagreed with that. So at that point, now momentarily the AUSA kind of played on the district court's field of the 30 to 37 months, and that was wrong, but that's the part that he then fixed. So that's our submission. How does it fix it when he says, I do believe the defendant deserves and has already been imposed by the court the said 31 to 37 months? How does it cure it when he says that I believe at this point that the sentence is a deserved sentence? Right. When he harkens back to his sentencing memorandum, and I would encourage the court to look at that as well. I believe it's page ID 160-161 as a sentencing memorandum. He's arguing for a substantial term of incarceration there, too, in the 21 to 27-month range. So he's not being inconsistent in the sense of he's saying I believe she deserves a substantial period of incarceration. However, I don't want to be inconsistent. Our position has not changed from our sentencing memorandum. So that was the – I mean, if he's not objecting to – I mean, if that's not what he means, why is he objecting? I mean, the only thing that has changed – he never said he thinks that 2K2.1 should apply. The only thing he did was – and essentially what happened was when the defense counsel gets up to allocute, she says, hey, that was in violation of the plea agreement. And so, I mean, I didn't talk to the AUSA directly about this, but I think that probably cued him in to say, you know what, she's right about that. I should not have argued for the 30 to 37-month range. So that's what he's trying to walk back. I know, but does he actually do it? I mean, rather than say, and it is still our position that the appropriate sentence is 21 to 27 months, he says that it's my position that the sentence imposed is the deserved sentence of 31 to 37. Then he says, however, I didn't want to – I don't want to be inconsistent. I don't want to be inconsistent. That was the position. Well, I don't know what the position is today. I mean, he doesn't say, and it's still our position that 21 to 27 is the appropriate sentence. You have to kind of read that in or imply it because he doesn't say it, does he? Respectfully, I would disagree with that, and again, I'd point you to – Did I read it incorrectly? Well, you didn't read that part incorrectly, but if you look about five lines up on the same page, page 294, he says, and this is the part that we – our submission is this is unequivocal. He says, I would just reiterate that what I put in my sentencing memorandum, that was still the government's position. He's not talking about the enhancement because he never said the enhancement should apply. He said in the past tense, that was still the government's position. He doesn't say that is still the government's position. Maybe it's just a slip of the tongue. Well, it's the still. The still means still – in other words, he's not talking about the enhancement because he never said the enhancement should apply. He's talking about the 21 to 27 months. He's hearkening back to that. So that's what we would – that's what we would submit. Does the government have to maintain its position of what it's promised throughout the sentencing hearing? Yes, Your Honor, and we're not saying that that 30 to 37 months was not a mistake. It was a mistake for him to say that. What we're saying is that under cases like Purser, Taylor, Harches – If it's a mistake, how can it be a clear cure? I mean, you're talking about part of the cure here is mistaken language, and I would think a cure would have to be totally unambiguous and totally clear. And here the alleged cure is ambiguous at a minimum, I would think. No? Respectfully, Your Honor, we disagree, and I'll try to explain again why. Okay, I think you've tried. Well, right. I mean, so he – I guess the important point is the AUSA never argued that the enhancement should apply. So the only thing he could possibly be referring to is the range. So by saying, I'm sticking by my sentencing memorandum, he's talking about the range because he's realizing then and there in court that he should not have argued for the 30 to 37-month range. And if you look at cases like Purser, Taylor, Harches, and Amico, those were all cases where the AUSA argued for something that was incorrect in violation of the plea agreement, and this court and other courts have said, and I would put – Purser's a Fifth Circuit case, but it's got a great discussion about this, about the concept of cure following a plea breach. In Purser it was similar in the sense of the parties had signed up for a four-point sentencing enhancement. The AUSA argued, I believe, in a sentencing memorandum for a six-point enhancement and then kind of walked that back. So it's this idea of – we're not saying that the AUSA should have argued for the 30 to 37-month range, but our submission is that that was cured. If I may talk about the 2K2.1 enhancement, kind of more the substantive claim that they've made that the district court erred in applying that enhancement, we would submit that at least seven pieces of circumstantial evidence supported the district court's finding that the 2K2.1 enhancement applied. First, however, I want to make one clarification for the record. Ligon has characterized a statement the FBI agent made, and this is really looking at the reply brief mainly, to the PSR writer as discredited and materially false. As the AUSA informed the district court, Ligon did not tell the FBI that Darnell Peterson had told her he was robbing banks. However, as the AUSA also said, and I'm looking at page ID 259, there was evidence to suggest that Ligon could have figured this out. And the video of that interview is not before this court. It was not before the district court, so it's extra record material. But I would submit to you that I've reviewed it in getting ready for this argument, and there are statements in there that support the FBI's agent to the PSR writer. I'm not asking this court to rely on that. I'm just concerned a little bit about the ancillary ramifications to this FBI agent, and I wanted to dispel any notion that he was intentionally trying to mislead the PSR writer on that. Looking at why it was not error for the district court setting aside that issue, and we're not relying on it here because of our position in the district court, why it was not error for the district court to disagree with the AUSA's position and apply the enhancement. There are at least seven aspects of circumstantial evidence that support that factual finding. First, Ligon's boyfriend, Peterson, was known to law enforcement as an associate of the Rack Gang. Second, FBI agent Jacobs stated that Peterson was involved in numerous violent felonies, including multiple takeover bank robberies in the Cleveland area. Third, close associates of Peterson used the rifle to attempt to rob a credit union seven days after he received the rifle. Did the district court rely on any of this circumstantial evidence in its ruling? Yes, Your Honor, she did because this is all in the PSR that I'm reciting here. I guess my point is that it's not the direct evidence of Ligon's statement to the FBI, but it's the circumstantial evidence, and my colleague has kind of characterized it as, well, that's what the FBI knew about Peterson. I totally agree with that, but this was her boyfriend. So it's circumstantial evidence that she also would have known, and I would also point to the discussion with the district court judge. The district court judge found that Ligon had lied to the PSR writer about how she lost control of that assault rifle, and that was really important to the district court judge. And so in reality what happened was what Ligon told the FBI just days afterwards was she gave that firearm to Peterson in the parking lot of the store and never saw it again. So then she tells this story about having a party with 70 people in her basement, and then she loses the firearm after that. The district court judge discredited her and based the fact that she applied the 2K2.1 enhancement, in large part, I would submit, on that lie. And so this is a clearly erroneous factual finding standard, and we would submit that there was more than ample evidence for the district court judge to apply the 2K2.1 enhancement. If there are no further questions on either issue, you would ask that the court affirm the district court judge. Thank you. Just one point on rebuttal, Your Honors. Page ID number 294, which we've been discussing as the reported cure, there's two paragraphs that we're looking at. The first paragraph says that AUSA starts with, well, with respect to the four-level enhancement. And that's the paragraph that ends with, I would just reiterate what I put in my sentencing memorandum. That's still the government's position. That's what my colleague says was referring to the increased range, not the enhancement. He starts with respect to the enhancement. He's talking about the enhancement. He says so. That's when he moves on and says, I realize when I was arguing for a sentence, and a lengthy one, and the defendant does deserve it and it's already been imposed, that's the only time he starts to talk about the higher range and his recommendation. And that's not an unequivocal cure at all. He's reiterating, if anything, his prior statement. Unless there are further questions. One of your arguments was it was too late, the cure was too late, the sentence was imposed. They argue, no, the judge was within the discretion to change his mind, and he could have gone back and imposed the lower sentence at that point. Is that true? I haven't looked at that carefully, Your Honor. I have to be honest. Judge Griffin, what you brought up earlier about, I'm well familiar with the case law that says once the court has orally imposed a sentence, they can't go back except via Rule 35 proceeding. That was kind of my understanding. Right. So there's all sorts of case law, obviously, where if the judgment differs from the oral pronouncement, the oral pronouncement controls. I'm not exactly sure how that would play out here, but I would add, again, the judge starts with, to the AOA, I would ask you to explicitly state your objections for the record. That's the Bostick question. It's focused on objections. He refers to the four-level enhancement. We're sticking with our memorandum for that. Oh, and I said something about a higher recommendation, and then it ends. That's, at the very least, not an unequivocal retraction, and I do believe it came too late. How about the circumstantial evidence in support of the enhancement? I didn't think that was relied on. I thought the FBI agent's statement was really the sole basis for the enhancement, but did the judge also rely on the circumstantial evidence in the PSR? So the judge read into the record what the PSR said, and the PSR says, one, the FBI agent knows that Peterson is a known associate of gang members, he's committed crimes before, and she told me that she knew he'd robbed banks. Now, that part's inaccurate. Did the judge also rely on those other statements? It appears so, but it's unclear exactly what the judge was relying on parsing those out. Are they sufficient for the enhancement, the circumstantial evidence in the PSR? I don't believe so, and my time is up, but if I could just finish answering your question. Please. My colleague relies primarily on her statement, saying that was false and that discredited her, but two points on that. One is she admitted transferring in both statements. The circumstances changed, and I'm not going to defend that, but she admitted transferring it to the boyfriend, and that was the crime she was charged with. The second is, I mean, going back even into Anderson v. Liberty Lobby, the Supreme Court has said disbelieving a witness isn't the same as affirmative evidence and isn't sufficient even on a summary judgment standard. You can't just rely on the fact that we think you shouldn't believe this witness. Now, she didn't say, you know, I transferred it and I knew he was going to use it this way. She says I transferred it. He took it with him. So the fact that there's circumstances around that the district court didn't believe doesn't provide evidence that she somehow did know that he had committed crimes on other occasions. That's a disconnect. Thank you. Thank you, counsel, both of you, for your arguments this morning. We very much appreciate them. The case will be submitted, and you may call the next case.